UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
**2016 MSPB 16**

Docket No. AT-0752-15-0454-I-1

**Steven P. Pirkkala,**

**Appellant,**

**v.**

**Department of Justice,**

**Agency.**

March 31, 2016

Steven P. Pirkkala, Pembroke Pines, Florida, pro se.

Gail Elkins, Esquire, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## OPINION AND ORDER

¶1 The appellant has filed a petition for review of the initial decision, which dismissed his appeal of the agency's removal action for lack of jurisdiction. For the reasons discussed below, we VACATE the initial decision, find that the Board has jurisdiction over the appeal, and DISMISS the appeal as untimely filed without good cause shown for the delay.

## BACKGROUND

¶2 Effective March 27, 2009, the agency removed the appellant from his GS-11 Correctional Treatment Specialist position for providing a random drug test specimen that tested positive for an illegal drug. Initial Appeal File (IAF),

Tab 10 at 123-24. The decision letter informed the appellant that he had the right to challenge the action through the negotiated grievance procedure, an appeal to the Board, or the equal employment opportunity complaint process. *Id*. at 126. The decision also clearly stated that, if the appellant elected to file a grievance, he had to do so within 40 calendar days. *Id.* On May 27, 2009,[1] a month after the deadline set in the decision notice, the appellant signed a formal grievance alleging, among other things, that the agency failed to follow drug-testing procedures and violated other rules and regulations. *Id*. at 118. The grievance requested rescission of the removal.

¶3      On June 24, 2009, the agency "rejected" the grievance as untimely filed, and thereafter the appellant's union indicated that it would invoke arbitration. Petition for Review (PFR) File, Tab 3 at 15; IAF, Tab 13 at 10. However, in August 2009, before the arbitration hearing, the union indicated that it would neither represent the appellant nor participate in the arbitration because, although the appellant was a member of the collective bargaining unit, he was not a dues paying member. IAF, Tab 11 at 5-7, 10. In an August 27, 2009 email, on which the appellant was copied, the arbitrator indicated that he had been informed that

---

[1] The formal grievance contains a facsimile date (at the top of the page) of April 30, 2009. IAF, Tab 10 at 118. It also bears a date stamp and the signature of the recipient indicating that it was received by the agency on May 27, 2009. *Id*. If the grievance was filed on April 30, 2009, it would have been timely, i.e., filed within 40 days of the March 27, 2009 effective date of the appellant's removal. Adding to the confusion over the filing date of the grievance is a statement by the agency in its response to the administrative judge's show cause order on timeliness that the grievance was timely filed. *Id*. at 7. However, it is unlikely that the formal grievance was filed on April 30, 2009, because the record contains a request for informal resolution dated May 5, 2009, and there is a statement on the grievance form that an informal grievance was filed on May 5, 2009. *Id*. at 118-19. The collective bargaining agreement does not mention an informal grievance as part of the grievance process. *Id*. at 90-92. In any event, as discussed in this decision, despite the confusion about the filing date of the grievance, the Board will not second guess the agency's ultimate determination, which could have been, but was not, subject to arbitration, that the grievance was untimely filed.

the union would not represent the appellant and that therefore he was declining to act as the arbitrator. *Id*. at 10. There is no indication that there was any further activity involving the arbitration of the appellant's removal.[2]

¶4      On March 27, 2015, 6 years after the effective date of the removal, the appellant filed this Board appeal. IAF, Tab 1. After affording the parties the opportunity to provide evidence and argument, IAF, Tab 12, the administrative judge found that the appellant elected to pursue his removal through the parties' negotiated grievance procedures when he filed his grievance and thus the Board was without jurisdiction over the appeal, IAF, Tab 15, Initial Decision (ID). In his petition for review, the appellant argues that because his grievance was dismissed as untimely filed and did not proceed to arbitration, he was not afforded due process in the grievance procedure. PFR File, Tab 3.

## ANALYSIS

The Board has jurisdiction over the appeal.

¶5      The agency's decision rejecting the appellant's grievance as untimely filed was not submitted into the record below. Under 5 C.F.R. § 1201.115, the Board generally will not consider evidence submitted for the first time with a petition for review absent a showing that it was unavailable before the close of the record below despite the party's due diligence. *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980). The decision on the appellant's grievance, issued on June 24, 2009, was available before the record closed below in 2015. However, as explained below, the appellant's submission is relevant to the issue of Board jurisdiction, a matter that may be raised at any time during the Board

---

[2] The appellant complained to the Federal Labor Relations Authority about the union's decision not to take his case to arbitration because he was not a dues paying member, and it appears that as a result of a settlement agreement, a posting was made regarding the union's obligations to nonmember bargaining unit employees. IAF, Tab 11 at 5-7, 11-12, Tab 13 at 9.

proceedings. *Stoglin v. Department of the Air Force*, 123 M.S.P.R. 163, ¶ 7 (2015), *aff'd*, No. 2015-3215, 2016 WL 146702 (Fed. Cir. Jan. 13, 2016); *Morgan v. Department of the Navy*, 28 M.S.P.R. 477, 478 (1985).  Accordingly, under the circumstances of this appeal, we have considered the jurisdictional issue raised by the appellant's submission.

¶6          Pursuant to the statute governing grievance procedures, 5 U.S.C. § 7121(e)(1), matters such as the appellant's removal that are covered under a negotiated grievance procedure and Board jurisdiction "may, in the discretion of the aggrieved employee, be raised either under the appellate procedures of section 7701 of this title or under the negotiated grievance procedure, but not both."  The statute further provides that an employee shall be deemed to have exercised his option under section 7121(e)(1) to raise a matter either under the negotiated grievance procedure or under the applicable appellate procedures "at such time as the employee timely files a notice of appeal under the applicable appellate procedures or timely files a grievance in writing in accordance with the provisions of the parties' negotiated grievance procedure, whichever event occurs first."  5 U.S.C. § 7121(e)(1) (emphasis supplied).  Thus, the election right is exercised when an employee timely files a grievance or a Board appeal.  *See id.*

¶7          The starting point for every case involving statutory construction is the language of the statute itself.  Where the statutory language is clear, it must control absent clearly expressed legislative intent to the contrary.  *Harellson v. U.S. Postal Service*, 115 M.S.P.R. 378, ¶ 14 (2011); *Hall v. Office of Personnel Management*, 102 M.S.P.R. 682, ¶ 9 (2006).  Here, we find that the language is clear on its face.

¶8          The statutory language in this appeal was set forth as part of the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111, 1212.  A review of the legislative history of that statute reveals that, while Congress considered an

employee's right of election, none of it focused on the timeliness issue presented by this appeal.[3]  *See, e.g.*, S. Rep. No. 95-969, at 110 (1978); H.R. Rep. No. 95-1403, at 56 (1978).  Thus, nothing in the legislative history precludes us from interpreting the statutory language by its plain meaning.  While it may appear incongruous to give someone who has untimely invoked one remedial scheme the benefit of another remedial scheme, we are constrained by the relevant statutory language enacted by Congress.[4]

¶9        As discussed above, the agency rejected the appellant's grievance as untimely filed.  PFR File, Tab 3 at 15.  Thus, based on the language of the statute, we find that the appellant cannot be deemed to have exercised his right of election under section 7121(e)(1) to contest his removal through the negotiated grievance procedure.  Thus, because the appellant did not effectively elect another forum in which to challenge his removal, his appeal to the Board is within the Board's jurisdiction.

The appellant's appeal was untimely filed without good cause shown for the delay.

¶10       Because the administrative judge dismissed the appeal for lack of jurisdiction, she did not reach the issue of whether the appeal was timely filed.  ID at 4 n.3.  The administrative judge ordered the appellant to file evidence and

---

[3] In 1994, Congress amended section 7121, but the legislative history of that statute does not address the timeliness issue presented by this appeal.  Pub. L. No. 103-424, 108 Stat. 4361; S. Rep. No. 103-358 (1994).

[4] In interpreting 5 U.S.C. § 7121(d), which contains language very similar to the statutory provision at issue in this appeal, the Federal Labor Relations Authority found that an employee's untimely equal employment opportunity complaint did not preclude arbitration.  *National Treasury Employees Union, Chapter 145 and the Department of Homeland Security*, 65 F.L.R.A. 188 (2011).  The Equal Employment Opportunity Commission similarly has found that an employee is not deemed to have raised an issue under a negotiated grievance procedure unless the grievance was timely filed.  *Verkennes v. Department of Defense*, EEOC Appeal No. 01913941, 1991 WL 1188537, at *3 n.1 (Dec. 10, 1991).

argument showing that the appeal was timely filed or that good cause existed for any delay in filing. IAF, Tab 6 at 3. She also ordered the agency to file any evidence that it had on the timeliness issue. *Id*. at 4-5. The appellant did not respond to the timeliness order, but filed a request for "Psychological Assistance and Representative to Proceed." IAF, Tab 7 at 3. The agency responded with a motion to dismiss, arguing that the appeal was untimely filed and that the Board lacked jurisdiction because the appellant had elected to grieve his removal through the negotiated grievance procedure. IAF, Tab 10 at 6-8.

¶11    The administrative judge then issued an order to show cause why the appeal should not be dismissed for lack of jurisdiction. IAF, Tab 12. The appellant responded, contending that the union did not properly represent him and contesting the merits of his removal. IAF, Tabs 13-14. He also stated that he is a disabled veteran and submitted extensive medical documentation. IAF, Tab 14. Ultimately, as noted, the administrative judge dismissed the appeal for lack of jurisdiction. ID.

¶12    While this matter was pending on review, the Clerk of the Board issued an order for the parties to submit evidence and argument regarding the timeliness of the appeal or the existence of good cause for the filing delay. PFR File, Tab 7. In that order, the Clerk of the Board noted that the record below "regarding the timeliness issue was neither developed nor resolved because the parties and administrative judge concentrated on the jurisdictional issue." *Id*. at 1. Among other things, the order informed the appellant what he needed to do to establish good cause for the filing delay and specifically what he needed to do to show that the delay was the result of an illness. *Id.* at 2. The appellant has responded to the order, and the agency has not. PFR File, Tabs 8-15. Thus, we now turn to the timeliness issue.

¶13    The Board's regulations provide that an appeal must be filed with the Board no later than 30 days after the effective date of the agency's action, or 30 days after the date of the appellant's receipt of the agency decision, whichever is

later.  5 C.F.R. § 1201.22(b).  To establish good cause for the untimely filing of an appeal, a party must show that he exercised due diligence or ordinary prudence under the particular circumstances of the case.  *Marcantel v. Department of Energy*, 121 M.S.P.R. 330, ¶ 10 (2014); *Alonzo v. Department of the Air Force*, 4 M.S.P.R. 180, 184 (1980).  To determine whether an appellant has shown good cause, the Board will consider the length of the delay, the reasonableness of his excuse and his showing of due diligence, whether he is proceeding pro se, and whether he has presented evidence of the existence of circumstances beyond his control that affected his ability to comply with the time limits or of unavoidable casualty or misfortune which similarly shows a causal relationship to his inability to timely file his appeal.  *Marcantel*, 121 M.S.P.R. 330, ¶ 10; *see Moorman v. Department of the Army*, 68 M.S.P.R. 60, 62-63 (1995), *aff'd*, 79 F.3d 1167 (Fed. Cir. 1996) (Table).

¶14    As noted, the effective date of the agency's action was March 27, 2009, and the appellant received the decision letter on that date.  IAF, Tab 10 at 123-27.  The decision letter informed the appellant of the 30-day time limit for filing a Board appeal.  *Id*. at 126.  Because the 30th day following March 27, 2009—April 26, 2009—was a Sunday, the deadline for the appellant to file a Board appeal was Monday, April 27, 2009.  5 C.F.R. § 1201.23.  It is undisputed that the appellant did not file a Board appeal by the deadline date, instead filing it on March 27, 2015, which was approximately 6 years late.

¶15    As discussed above, the appellant filed a grievance on May 27, 2009, the agency rejected the grievance as untimely filed on June 24, 2009, and the union then invoked arbitration before deciding not to represent the appellant, which apparently resulted in the end of arbitration proceedings.  IAF, Tab 10 at 118, Tab 11 at 5-7, 10; PFR File, Tab 3 at 15.  The appellant filed an unfair labor practice complaint against the union, and the Federal Labor Relations Authority determined that the union committed statutory violations by refusing to take the appellant's grievance to arbitration because he was not a union member.  IAF,

Tab 11 at 5-7, 11-12; Tab 13 at 9. There is no indication that the appellant was aware when he grieved the removal that the union would decide not to represent him. As the appellant states in his response to the timeliness show-cause order, he would have had needed a "crystal ball" in order to choose between filing an appeal to the Board or a union grievance prior to knowing that the union would fail to represent him in breach of its obligations under Federal labor law. PFR File, Tab 8 at 8. Under these circumstances, we find that there was good cause for the appellant's delay in filing this appeal prior to August 27, 2009, when the arbitrator's statement made it clear that, lacking union representation, the appellant's grievance arbitration would not proceed. IAF, Tab 11 at 10.

¶16    Even though the appellant has shown good cause for the delay in filing a Board appeal prior to August 27, 2009, he did not file his appeal until March 27, 2015, 5 years and 7 months later. IAF, Tab 1. The appellant argues that there was good cause for this lengthy delay because he was pursuing disability retirement benefits and, due to his mental disability, he believed that he was appealing both the denial of disability retirement benefits and his removal simultaneously, and that his removal appeal would be decided within the context of the disability retirement application process. PFR File, Tab 8 at 5-6, 8. According to the appellant, it was not until after he won his disability retirement appeal that he realized that his attorney was representing him only in that matter and not in a removal appeal. *Id*. at 5. He contends that he filed a pro se appeal of his removal with the Board soon after he won his disability retirement appeal. *Id*.

¶17    The appellant filed his disability retirement appeal with the Board on October 11, 2011, and the appeal was decided in his favor more than 3 years later on February 20, 2015, when the Board reversed the decision of the Office of Personnel Management (OPM) and awarded him disability retirement benefits

based on his physical disability, a torn labrum.[5]  *Pirkkala v. Office of Personnel Management*, MSPB Docket No. AT-844E-12-0029-I-3, Initial Decision at 1 n.1 (June 3, 2014); *Pirkkala v. Office of Personnel Management*, MSPB Docket No. AT-844E-12-0029-I-3, Final Order (Feb. 20, 2015).  The appellant's alleged confusion that challenging OPM's reconsideration decision on his disability retirement application was also an appeal of his removal is apparently supported by OPM basing its denial of disability retirement on his removal for cause.  *See Pirkkala v. Office of Personnel Management*, MSPB Docket No. AT-844E-12-0029-I-3, Final Order, ¶ 2.  The Board, however, found that the relevant evidence to determine the appellant's entitlement to disability retirement benefits was the medical evidence of record regarding the appellant's torn labrum, not the fact of his removal for cause.  *Id*., ¶¶ 9-14.  The Board also found that the appellant was not disabled on the basis of post-traumatic stress disorder (PTSD) because his psychiatrist stated that the appellant's PTSD was under control.  *Id*., ¶ 15.

¶18        In his response to the Clerk of the Board's order regarding the timeliness of his removal appeal, the appellant submits numerous documents, some of which are already in the record, regarding the processing of his grievance and the merits of the agency action.  PFR File, Tabs 9-15.  In addition, he submits medical evidence showing that he experiences and is being treated for severe anxiety and depression, "which may interfere with his ability to deal with more than one case at a time."[6]  PFR File, Tab 9 at 4; *see* PFR File, Tab 11 at 8.  In addition, he submits evidence of a torn labrum, suggesting that he is relying on that condition

---

[5] The labrum is the cartilage found in the shoulder.  U.S. National Library of Medicine, Medline Plus,  https://www.nlm.nih.gov/medlineplus/ency/article/007206.htm  (last visited on March 31, 2016).

[6] Although the appellant mentioned PTSD in his appeal of OPM's denial of disability retirement benefits, he does not cite that medical condition in his submissions addressing the untimely filing.  PFR File, Tabs 9-15.

as contributing to his delay in filing.  PFR File, Tab 9 at 5, Tab 11 at 11, Tab 14 at 4-6.

¶19    The Board will find good cause for a waiver of its filing time limits where a party shows that he suffered from an illness that affected his ability to file on time.  *Braxton v. Department of the Treasury*, [119 M.S.P.R. 157](), ¶ 7 (2013); *Lacy v. Department of the Navy*, [78 M.S.P.R. 434](), 437 (1998).  To establish that an untimely filing was the result of an illness, the party must:  (1) identify the time period during which he suffered from the illness; (2) submit medical or other corroborating evidence showing that he suffered from the alleged illness during that time period; and (3) explain how the illness prevented him from timely filing his appeal or requesting an extension of time.  *Braxton*, [119 M.S.P.R. 157](), ¶ 7; *Lacy*, 78 M.S.P.R. at 437 & n.*.  The party need not prove incapacitation during the filing period.  *Braxton*, [119 M.S.P.R. 157](), ¶ 7; *Lacy*, 78 M.S.P.R. at 437 & n.*.  He need prove only that his ability to file with the Board was "affected" or "impaired" by illness.  *Washington v. Department of the Navy*, [101 M.S.P.R. 258](), ¶ 13 (2006); *Lacy*, 78 M.S.P.R. at 437 & n.*.

¶20    Regarding the appellant's torn labrum, the medical evidence submitted by the appellant shows that he suffered from that condition prior to 2009.  PFR File, Tab 11 at 11, Tab 14 at 4-6.  He has not, however, explained how that illness prevented him from timely filing his appeal.  *See Braxton,* [119 M.S.P.R. 157](), ¶ 7*; Lacy*, 78 M.S.P.R. at 437.  Thus, we find that the appellant's shoulder problems did not affect his ability to file a timely removal appeal.

¶21    Regarding his severe anxiety and depression, the medical evidence submitted by the appellant shows that he began treatment for the condition on August 10, 2010.  PFR File, Tab 11 at 8.  Importantly, the appellant does not equate his severe anxiety and depression with the PTSD that he identified in his disability retirement appeal, which, as noted, his psychiatrist said was under control.

¶22    Even if we were to assume that the appellant's anxiety and depression affected his ability to file an appeal after August 10, 2010, that leaves unresolved whether he established good cause for the delay in filing his removal appeal for the period from August 27, 2009, when the arbitrator's statement made it clear that the union would not represent the appellant, until August 10, 2010, when he began treatment for extreme anxiety and depression.  IAF, Tab 11 at 10; PFR File, Tab 11 at 8.  On some date during this period, the appellant filed for disability retirement because, to be timely, a disability retirement application under the Federal Employees' Retirement System must be filed within 1 year of the employee's separation from Federal employment.  5 U.S.C. § 8453.

¶23    In his response to the show cause order, the appellant admits that his disability retirement application was not filed until "many months after the grievance and August, 2009, unfair Arbitration denial."  PFR File, Tab 10 at 7. The appellant has presented no evidence of illness that affected his ability to file an appeal of his removal during the 7 months between August 27, 2009, and March 27, 2010, the date by which he must have filed his application for disability retirement.

¶24    In sum, the appellant's filing delay was significant and the appellant has not shown good cause for the filing delay.  *See Mauldin v. U.S. Postal Service,* 115 M.S.P.R. 513, ¶ 13 (2011) (finding a 7-month delay in filing an appeal was significant); *Crook v. U.S. Postal Service*, 108 M.S.P.R. 553, ¶ 6 (finding a 1-month delay "significant"), *aff'd*, 301 F. App'x 982 (Fed. Cir. 2008). Thus, we dismiss the appeal as untimely filed without good cause shown for the delay.

## ORDER

¶25    This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:

_____
William D. Spencer
Clerk of the Board
Washington, D.C.